MEG:PAS
F. #2018R01782

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| IN THE MATTER OF AN APPLICATION FOR SEARCH WARRANTS FOR THE PERSON KNOWN AND DESCRIBED AS JASON CROWDER, DATE OF BIRTH ███████ THE PERSON KNOWN AND DESCRIBED AS ALLAN FLOYD, DATE OF BIRTH ███████ ███ AND THE PERSON KNOWN AND DESCRIBED AS EDWARD GOTAY, DATE OF BIRTH ███████ ████¹ | AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR SEARCH WARRANTS<br><br>(Fed. R. Crim. P. 41)<br><br>No. 19-MJ-329 (LB) |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

EASTERN DISTRICT OF NEW YORK, SS:

      Finbarr Fleming, being duly sworn, deposes and states that he is a Task Force

Officer with the Bureau of Alcohol, Tobacco, Firearms and Explosives, duly appointed

according to law and acting as such.

      Upon information and belief, there is probable cause to believe that evidence of

violations of Title 18, United States Code, Sections 1201(c)(1), 1201(g)(1), 1951(a),

924(c)(1)(A)(i), 924(c)(1)(A)(ii), 924(c)(1)(A)(iii) and 2—specifically, that on or about July

---

¹    Because the search warrant affidavit and search warrant contain personally identifiable information, the government requests permission to file the search warrant and affidavit in redacted form on the public docket. Unredacted copies of the warrant and the affidavit have been filed with the Court and will be provided to the defendant.

8, 2018, defendants BARIN BROWN, JASON CROWDER, date of birth █████████,

ALLAN FLOYD, date of birth █████████ and EDWARD GOTAY, date of birth ██████

████, committed an armed kidnapping and armed robbery of three victims, including an

approximately 16-month-old child, in Staten Island, New York—will be obtained by taking,

and preserving as evidence, buccal swab samples from defendants JASON CROWDER,

ALLAN FLOYD and EDWARD GOTAY.[3]

The source for your deponent's information and the grounds for his belief are

as follows:[4]

1.      I am a Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms

and Explosives (hereafter "ATF").   The facts set forth in this affidavit are based upon my own

investigation of the facts and upon what I have learned from other individuals who have

participated in the investigation.   Additionally, statements attributable to individuals herein

are set forth in sum and substance and in part.

2.      I have been involved in an investigation of the defendants related to

the aforementioned criminal activity.

---

[2]      A review of NYPD law enforcement database information revealed two additional
potential dates of birth for defendant JASON CROWDER including: ████████ and █
█████.

[3]      Some of the courts that have addressed the issue have found that obtaining DNA via
saliva is subject to the protections of the Fourth Amendment.  See United States v. Nicolosi,
885 F. Supp. 50, 51-56 (E.D.N.Y. 1995) (Glasser, J.); In re Shabazz, 200 F. Supp. 2d 578, 581-
85 (D.S.C. 2002).   But see United States v. Owens, 2006 WL 3725547, at *6-17 (W.D.N.Y.
Dec. 15, 2006) (finding probable cause not necessary for a saliva sample for DNA from an
inmate); In re Vickers, 38 F. Supp. 2d 159, 165-68. (D.N.H. 1998) (permitting saliva sample
by grand jury subpoena).

[4]      Because the purpose of this affidavit is to set forth only those facts necessary to establish
probable cause to search, I have not set forth all of the facts and circumstances relevant to this
investigation.

3. On February 27, 2019, defendant ALLAN FLOYD was arrested and brought into federal custody pursuant to an affidavit and criminal complaint issued by the Honorable Steven L. Tiscione, United States Magistrate Judge (Dkt. No. 19-MJ-181 (ST)). On March 6, 2019, the Honorable James Orenstein, United States Magistrate Judge, issued arrest warrants for defendants BARIN BROWN, JASON CROWDER and EDWARD GOTAY on the basis of an affidavit and complaint. (Dkt. No. 19-MJ-198 (JO)). On March 8, 2019, defendant BARIN BROWN was arrested and brought into federal custody. On April 8, 2019, defendant EDWARD GOTAY was arrested and brought into federal custody. On April 10, 2019, JASON CROWDER was arrested and brought into federal custody.

4. The above described complaints and affidavits are attached hereto as Exhibit A and Exhibit B and the factual recitations therein are incorporated fully herein.

5. In addition to the factual recitation incorporated herein in Exhibit A and Exhibit B, in connection with the investigation of the crime scene, law enforcement agents collected swabs of possible DNA evidence from the straps of a black du-rag (hereafter the "du-rag") that was recovered in the victims' home shortly after the armed kidnapping and armed robbery. Law enforcement agents also collected swabs of possible DNA evidence from a door handle (hereafter the "door handle") at the victims' home as well swabs of possible DNA evidence from one of the victims' cellphones (hereafter the "cellphone").

6. On August 29, 2018 the New York City Office of the Chief Medical Examiner (hereafter "OCME") reported that, not including the victims' DNA, there were three possible DNA contributors to the DNA recovered from the du-rag. In addition, OCME reported that, not including the victims' DNA, the door handle had one possible DNA

contributor. OCME also reported that, not including the victims' DNA, the cellphone had one possible DNA contributor.

7. I know from my training and experience, as well as my conversations with other law enforcement officials, that DNA can be recovered from objects such as a du-rag, a door handle and a cellphone. The DNA evidence collected by law enforcement can be tested by the OCME for the presence of DNA. Based on the facts set forth in Exhibit A and Exhibit B, there is a substantial likelihood that the DNA of one or more defendants JASON CROWDER, ALLAN FLOYD and EDWARD GOTAY will be found on the du-rag, the door handle and the cellphone.

8. The government seeks to compare the DNA from the du-rag, the door handle and the cellphone with a DNA sample obtained directly from defendants JASON CROWDER, ALLAN FLOYD and EDWARD GOTAY (e.g., buccal swabs).

9. Based on the above information, there is probable cause to believe that defendants JASON CROWDER, ALLAN FLOYD and EDWARD GOTAY are contributors to DNA evidence found on the du-rag, the door handle and the cellphone. Therefore, there is probable cause to believe that a buccal swab would constitute evidence of the defendants' commission of the charged crimes.

WHEREFORE, your deponent requests that search warrants be issued authorizing ATF Special Agents, New York City Police Department officers, United States Marshals and other appropriate law enforcement and support personnel to seize and obtain from defendants JASON CROWDER, ALLAN FLOYD and EDWARD GOTAY, a buccal swab sample. An appropriately trained law enforcement officer, or an appropriately trained designee, will perform the cheek swabbing. The DNA samples sought herein will be collected

by buccal swabbing. This method involves taking a sterile swab (similar to a Q-Tip) and gently scrubbing the inside right cheek, then the inside left cheek, for approximately five to ten seconds. Two samples for each defendant are requested in the event that one of the samples becomes contaminated or otherwise cannot be tested. The samples seized will be subsequently submitted to a forensic laboratory for examination and will be subject to examination, testing and analysis.

Finbarr Fleming,
Task Force Officer
Bureau of Alcohol, Tobacco, Firearms and
Explosives

Sworn to before me this
10th day of April, 2019

THE HONORABLE LOIS BLOOM
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

**EXHIBIT A**

MKM:PAS
F. #2018R01782

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

— — — — — — — — — — — — — — — — —X

UNITED STATES OF AMERICA

- against -

ALLAN FLOYD,
    also known as "Rugar Richmond Ace,"

            Defendant.

— — — — — — — — — — — — — — — —X

COMPLAINT AND AFFIDAVIT
IN SUPPORT OF AN
APPLICATION FOR AN ARREST
WARRANT

(T. 18, U.S.C., §§ 1201(a)(1), 1201(g)(1),
1951(a), 924(c)(1)(A)(i),
924(c)(1)(A)(ii) and 2)

Cr. No. 19-MJ-181

EASTERN DISTRICT OF NEW YORK, SS:

        FINBARR FLEMING, being duly sworn, deposes and states that he is a Task

Force Officer with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), duly

appointed according to law and acting as such and states as follows:

        In or about July 2018, within the Eastern District of New York and elsewhere,

the defendant ALLAN FLOYD, also known as "Rugar Richmond Ace," together with others,

did knowingly and intentionally conspire to seize, confine, inveigle, kidnap, abduct and carry

away and hold, for ransom and reward and otherwise, one or more persons, to wit: Victim-1,

Victim-2 and Victim-3 (a child who was approximately 16-months old), individuals whose

identities are known to the Affiant, and to use one or more means, facilities and

instrumentalities of interstate and foreign commerce, to wit: cellular telephones, in committing

and in furtherance of the commission of the offense, contrary to Title 18, United States Code,

Sections 1201(a)(1) and 1201(g)(1).

In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, defendant ALLAN FLOYD, also known as "Rugar Richmond Ace," together with others, did commit and cause to be committed, among others, the following overt acts:

(a)   On or about July 8, 2018, defendant ALLAN FLOYD, also known as "Rugar Richmond Ace," in the presence of two co-conspirators, pointed a firearm at the head and chest of Victim-1;

(b)   On or about July 8, 2018, defendant ALLAN FLOYD, also known as "Rugar Richmond Ace," along with two co-conspirators, forced Victim-1 and Victim-2 into the victims' car;

(c)   On or about July 8, 2018, defendant ALLAN FLOYD, also known as "Rugar Richmond Ace," along with two co-conspirators, transported Victim-1, Victim-2 and Victim-3, by their car, to their residence and forced Victim-1 to enter the residence; and

(d)   On or about July 8, 2018, defendant ALLAN FLOYD, also known as "Rugar Richmond Ace," and two of his co-conspirators, took Victim-1 and Victim-2's property including, but not limited to, marijuana, United States currency, a safe, jewelry, clothing, collector edition Michael Jordan sneakers and a BB gun.

(Title 18, United States Code, Sections 1201(c)(1) and 1201(g)(1))

2

On or about July 8, 2018, within the Eastern District of New York, the defendant ALLAN FLOYD, also known as "Rugar Richmond Ace," together with others, did knowingly and intentionally obstruct, delay and affect commerce and the movement of articles and commodities in commerce, by robbery, to wit: the robbery of a narcotics trafficker in Staten Island, New York.

(Title 18, United States Code, Sections 1951(a) and 2)

On or about July 8, 2018, within the Eastern District of New York, the defendant ALLAN FLOYD, also known as "Rugar Richmond Ace," together with others, did knowingly and intentionally use and carry one or more firearms during and in relation to a crime of violence, to wit: the July 8, 2018 robbery referred to above, and did knowingly and intentionally possess said firearms in furtherance of said crime of violence, one or more of which firearms were brandished.

(Title 18, United States Code, Sections 924(c)(1)(A)(i), 924(c)(1)(A)(ii) and 2)

The source of your deponent's information and the grounds for his belief are as follows:[1]

1.     I am a Task Force Officer (hereafter "TFO") with the ATF. I have been a TFO since 2014 and have served in the New York City Police Department (hereafter "NYPD") for approximately 24 years. I have been involved in the investigation of numerous cases involving kidnappings, armed robberies and firearms offenses. The information in this

---

[1]     Because the purpose of this Complaint and Affidavit in Support of an Arrest Warrant are to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

Complaint comes from my personal involvement in the investigation, a review of records of the ATF, NYPD and other government agencies, including video footage recorded by surveillance cameras, reports of victim interviews and conversations with other law enforcement officers. Unless specifically indicated, all conversations and statements described in this affidavit are related in sum and substance and in part only.

2.      On or about July 8, 2018 at approximately 2:00 p.m., Allan Floyd, also known as "Rugar Richmond Ace," (hereafter "FLOYD"), and three co-conspirators (hereafter "Co-Conspirator-1," "Co-Conspirator-2" and "Co-Conspirator-3") participated in the armed kidnapping and armed robbery of a Staten Island, New York marijuana dealer (hereafter "Victim-1") along with Victim-1's fiancée (hereafter "Victim-2") and their approximately 16-month old child (hereafter "Victim-3") in the Eastern District of New York.[2]

3.      During interviews by the ATF and NYPD, Victim-1 stated that on or about July 8, 2018, Victim-1 spoke with Co-Conspirator-1 about purchasing high quality marijuana from Co-Conspirator-1.[3] Victim-1 planned to resell some of the high quality marijuana to Victim-1's cousin.   On at least one prior occasion, Victim-1 purchased marijuana from Co-Conspirator-1 and had also previously smoked marijuana with Co-Conspirator-1 at Victim-1's

---

[2]      Victim-1 has not received any benefits related to this investigation. Vicim-1's criminal history includes convictions under New York Penal law for: criminal trespass, criminal possession of marijuana, aggravated harassment, attempted criminal sale controlled substance and attempted criminal mischief.  Victim-2 has not received any benefits related to this investigation and does not have a criminal record.

[3]      This and all other statements by the victims and eyewitnesses to law enforcement are set forth in sum and substance and in part.

Staten Island home. During Co-Conspirator-1's visits to Victim-1's home, Victim-1 showed Co-Conspirator-1 where Victim-1 stored marijuana, United States currency, a safe, jewelry, clothing, collector edition Michael Jordan sneakers and a BB gun.

4.      Victim-1 further stated that on or about July 8, 2018 at approximately 2:15 p.m., Co-Conspirator-1 and Victim-1 agreed by phone to meet regarding the sale of the high quality marijuana at the corner of Slaight Street and Nicholson Avenue in Staten Island, New York. Feeling comfortable based on their prior interactions, Victim-1 drove to the meeting along with Victim-2 and Victim-3. After arriving at the location, Victim-1 saw Co-Conspirator-1, but as Victim-1 prepared to purchase the marijuana, three unknown men appeared and one of the men, later identified as FLOYD, displayed a firearm and pointed it at Victim-1's head and chest. Co-Conspirator-1 immediately ran away. FLOYD then stated in sum and substance, "take your chain off," and, "give me all your money before I smack you with this Duce-Duce." Along with FLOYD were men later identified as Co-Conspirator-2 and Co-Conspirator-3.

5.      According to both Victim-1 and Victim-2, after FLOYD demanded Victim-1's chain and money, FLOYD then told Victim-1 and Victim-2 to get out of the car. Victim-2 responded that Victim-3 was in the back seat of the car and FLOYD stated in sum and substance, "get in the back seat we are not doing this here." FLOYD, Victim-1 and Victim-2 then sat in the back seat of the car with Victim-3. Co-Conspirator-2 got into the car's driver's seat and Co-Conspirator-3 sat in the car's front passenger seat. FLOYD continued to point the gun at Victim-1's head and chest as Co-Conspirator-3 took Victim-1 and Victim-2's cellphones. Co-Conspirator-2 then drove to Victim-1 and Victim-2's Staten Island home.

5

Neither Victim-1 nor Victim-2, provided directions or their home address to Co-Conspirator-2.

6.     Surveillance cameras at Victim-1 and Victim-2's home captured video footage of FLOYD, Co-Conspirator-2 and Co-Conspirator-3. None of the men wore masks, and the images captured by the surveillance cameras show Victim-1, FLOYD and Co-Conspirator-3 entering the home. FLOYD was wearing a black t-shirt, black pants and black and white sneakers. Co-Conspirator-3 was wearing a black du-rag, white t-shirt, tan colored shorts and white sneakers. When FLOYD and Co-Conspirator-3 entered the home they did not have anything covering their hands.

7.     Victim-1 stated that, once inside the home, FLOYD and Co-Conspirator-3 put on latex gloves. FLOYD and Co-Conspirator-3 immediately went to the area of the house where Victim-1 had previously shown Co-Conspirator-1 marijuana, United States currency, a safe, jewelry, clothing, collector edition Michael Jordan sneakers and a BB gun. Also while inside the home Co-Conspirator-3 told Victim-1 that he had a gun, but that it was not as large as FLOYD's gun. Co-Conspirator-3 did not show Victim-1 the additional firearm.

8.     Victim-1 further explained that FLOYD and Co-Conspirator-3 placed Victim-1 and Victim-2's property from their house into various bags. When FLOYD was unable to locate the BB gun he demanded that Victim-1 give him the BB gun.[4] Victim-1

---

[4]     Before the July 8, 2018 kidnapping and armed robbery, but after Victim-1 showed Co-Conspirator-1 the location of Victim-1's BB gun, Victim-1 moved the location of the BB gun because Victim-1 was afraid of an investigation concerning Victim-1's neighbors and Child and Protective Services.

located the BB gun and gave it to FLOYD. Co-Conspirator-3 then told Victim-1 that in order to avoid suspicion by Victim-1 and Victim-2's neighbors, Victim-1 had to help FLOYD and Co-Conspirator-3 carry Victim-1 and Victim-2's property outside of the house.

9. While FLOYD, Co-Conspirator-3 and Victim-1 were inside the residence, surveillance video also captured Co-Conspirator-2, Victim-2 and Victim-3 outside the residence. Co-Conspirator-2, did not wear a mask. He wore a black du-rag, black shirt and dark pants, along with white and dark colored shoes. Co-Conspirator-2 initially had his hands in his pants' pockets concealing the fact that he was wearing what Victim-2 described, and later parts of the surveillance video corroborates, as white latex gloves. As Co-Conspirator-2 and Victim-2 waited for the men inside the home, Victim-2 stated that Victim-2 asked Co-Conspirator-2 to take off the white latex gloves in order to avoid suspicion by Victim-2's neighbors. Victim-2 feared for Victim-1's safety if police arrived while the men were inside Victim-2's home with Victim-1. Co-Conspirator-2 complied with Victim-2's request, and surveillance video corroborates Victim-2's description of Co-Conspirator-2 removing his white latex gloves.

10. At approximately 3:00 p.m. surveillance videos further captured FLOYD, Co-Conspirator-2 and Co-Conspirator-3 carry Victim-1 and Victim-2's property away from the residence. As FLOYD, Co-Conspirator-2 and Co-Conspirator-3 walked away from the home, Co-Conspirator-3 was no longer wearing his black du-rag.[5] As they exit the

---

[5]     On July 8, 2018 following the kidnapping and armed robbery, Victim-2 was cleaning Victim-1 and Victim-2's home and found a black du-rag. Victim-2 reported the

home, Co-Conspirator-3 appeared to be wearing blue latex gloves and FLOYD appeared to be wearing white latex gloves. According to both Victim-1 and Victim-2, they begged Co-Conspirator-3 for the return of their cell phones. Additional surveillance videos then captured Co-Conspirator-3 returning the cellphones as FLOYD, Co-Conspirator-2 and Co-Conspirator-3 then walked approximately one block to the intersection of Orange Avenue and Seymour Street.

11.     Also at approximately 3:00 p.m., an eyewitness (hereafter "EW-1") stated that EW-1 parked near the corner of Orange Avenue and Seymour Avenue, and noticed what EW-1 believed was either a 2007 or a 2008 black model 740 BMW. EW-1 also noticed that the car was idling and was occupied by what appeared to be one male driver. The driver's head was down and EW-1 thought it was strange that the driver was wearing a black hooded sweatshirt with the hood up. EW-1 also remembered the black BMW had an orange New York license plate. EW-1, also thought that the driver of the black BMW might have had dreadlocks coming out from underneath the hood of the sweatshirt. Additional surveillance cameras from a residence also on Seymour Avenue captured what appeared to be the black BMW driving at a high rate of speed following the kidnapping and armed robbery towards Port Richmond Avenue.

12.     Shortly after the kidnapping and armed robbery, Victim-1 received a text message from Co-Conspirator-1, stating, "I didn't no DAT short was gonna happen dey must been plotting on me Call me." Victim-1 did not respond back to this text message. Victim-1

---

recovery of the du-rag to police and the Office of Chief Medical Examiner tested the du-rag for DNA. The DNA sample results include three DNA contributors.

has not heard from Co-Conspirator-1 since this July 8, 2018 text message. In the period prior to the armed kidnapping and armed robbery, Victim-1 and Co-Conspirator-1 were in contact approximately several times per month.[6]

13.   Records from AT&T, Inc. and Sprint, Inc. reflect that Co-Conspirator-1's cellular telephone number exchanged multiple communications with the FLOYD's cellular telephone, between July 7, 2018 through July 9, 2018.[7] Including on or about July 8, 2018, the date of the armed kidnapping and armed robbery, there were 22 phone contacts between Co-Conspirator-1's cellular telephone number and FLOYD's cellular telephone.

14.   On August 2, 2018, law enforcement agents showed photo arrays to Victim-1 and Victim-2 a photo array containing a picture of FLOYD. Victim-1 and Victim-2 each separately identified FLOYD and stated that he was the man with the gun on July 8, 2018.

15.   Later the same day, outside the presence of law enforcement, Victim-2 found that Victim-2 had received a Facebook friend suggestion to add "Allan Floyd" as a "friend." Victim-2 immediately recognized the friend suggestion as the man with the gun and the person Victim-2 earlier identified in the photo array. Victim-2 reviewed FLOYD's

---

[6]   In addition to Victim-1 communicating with Co-Conspirator-1 through text messages, on August 4, 2018, law enforcement officers responded to a domestic incident involving Co-Conspirator-1 where he provided the telephone number associated with the prior text messages with Victim-1.

[7]   On or about August 7, 2018, FLOYD was involved in a traffic stop by law enforcement officers where FLOYD provided the telephone number associated with prior communications with Co-Conspirator-1's telephone number.

Facebook photos and saw FLOYD wearing what appeared to be a pair of Victim-1's Air Jordan sneakers and Victim-2's watch, both of which were taken on July 8, 2018.

WHEREFORE, your deponent respectfully requests that defendant ALLAN FLOYD, also known as "Rugar Richmond Ace," be dealt with according to law.

Respectfully submitted,

FINBARR FLEMING
Task Force Officer
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn to before this
27 day of February, 2019

/s/ SLT

HONORABLE STEVEN L. TISCIONE
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

10

# **EXHIBIT B**

MKM:PAS
F. #2018R01782

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – –X

UNITED STATES OF AMERICA

    - against -

BARIN BROWN,
    also known as "Scruff,"
JASON CROWDER,
    also known as "Jason Ortiz,"
EDWARD GOTAY,
    also known as "Younggod Edde,"

                Defendants.

**TO BE FILED UNDER SEAL**

COMPLAINT AND AFFIDAVIT
IN SUPPORT OF AN
APPLICATION FOR ARREST
WARRANTS

(T. 18, U.S.C., §§ 1201(c)(1), 1201(g)(1),
   1951(a), 924(c)(1)(A)(i),
   924(c)(1)(A)(ii) and 2)

Cr. No. <u>19-MJ-198-JO</u>

– – – – – – – – – – – – – – – – – –X

EASTERN DISTRICT OF NEW YORK, SS:

        FINBARR FLEMING, being duly sworn, deposes and states that he is a Task

Force Officer with the Bureau of Alcohol, Tobacco, Firearms and Explosives (hereafter

"ATF"), duly appointed according to law and acting as such and states as follows:

        In or about July 2018, within the Eastern District of New York and elsewhere,

the defendants BARIN BROWN, also known as "Scruff," JASON CROWDER, also known

as "Jason Ortiz," Allan Floyd, also known as "Rugar Richmond Ace," and EDWARD

GOTAY, also known as "Younggod Edde," together with others, did knowingly and

intentionally conspire to seize, confine, inveigle, kidnap, abduct and carry away and hold, for

ransom and reward and otherwise, one or more persons, to wit: Victim-1, Victim-2 and Victim-

3 (a child who was approximately 16-months old), individuals whose identities are known to

1

the Affiant, and to use one or more means, facilities and instrumentalities of interstate and foreign commerce, to wit: cellular telephones, in committing and in furtherance of the commission of the offense, contrary to Title 18, United States Code, Sections 1201(c)(1) and 1201(g)(1).[1]

In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendants BARIN BROWN, also known as "Scruff," JASON CROWDER, also known as "Jason Ortiz," Allan Floyd, also known as "Rugar Richmond Ace," and EDWARD GOTAY, also known as "Younggod Edde," together with others, did commit and cause to be committed, among others, the following overt acts:

(a)     On or about July 8, 2018, defendant BARIN BROWN and Victim-1 agreed to meet in Staten Island, New York for a marijuana sale;

(b)     On or about July 8, 2018, defendant Allan Floyd, in the presence of defendant JASON CROWDER and defendant EDWARD GOTAY, pointed a firearm at the head and chest of Victim-1;

(c)     On or about July 8, 2018, defendant Allan Floyd, defendant JASON CROWDER and defendant EDWARD GOTAY forced Victim-1 and Victim-2 into the victims' car;

---

[1]     On or about February 27, 2019, defendant Allan Floyd was arrested and charged pursuant to an affidavit and criminal complaint issued by Magistrate Judge Steven L. Tiscione (19-MJ-181 (ST)).

2

(d)    On or about July 8, 2018, defendant EDWARD GOTAY transported Victim-1, Victim-2 and Victim-3, in the victims' car, to their residence, along with defendant Allan Floyd and defendant JASON CROWDER;

(e)    On or about July 8, 2018, defendant Allan Floyd and defendant JASON CROWDER forced Victim-1 to enter the victims' residence;

(f)    On or about July 8, 2018, defendant EDWARD GOTAY, watched Victim-2 and Victim-3, outside of the victims' residence, as defendant Allan Floyd, and defendant JASON CROWDER were inside the victims' residence with Victim-1;

(g)    On or about July 8, 2018, defendant JASON CROWDER, while inside the victims' residence, told Victim-1 to help carry outside the victims' property to avoid suspicion by the victims' neighbors;

(h)    On or about July 8, 2018, defendant JASON CROWDER, defendant Allan Floyd and defendant EDWARD GOTAY, took Victim-1 and Victim-2's property including, but not limited to, marijuana, United States currency, a safe, jewelry, clothing, collector edition Michael Jordan sneakers and a BB gun; and

(i)    On or about July 8, 2018, defendant JASON CROWDER, defendant Allan Floyd and defendant EDWARD GOTAY, fled the location in a car driven by defendant BARIN BROWN, also known as "Scruff."

(Title 18, United States Code, Sections 1201(c)(1) and 1201(g)(1))

On or about July 8, 2018, within the Eastern District of New York, the defendants BARIN BROWN, also known as "Scruff," JASON CROWDER, also known as "Jason Ortiz," Allan Floyd, also known as "Rugar Richmond Ace," EDWARD GOTAY, also known as "Younggod Edde," together with others, did knowingly and intentionally obstruct,

3

delay and affect commerce and the movement of articles and commodities in commerce, by robbery, to wit: the robbery of a narcotics trafficker in Staten Island, New York.

(Title 18, United States Code, Sections 1951(a) and 2)

On or about July 8, 2018, within the Eastern District of New York, the defendants BARIN BROWN, also known as "Scruff," JASON CROWDER, also known as "Jason Ortiz," Allan Floyd, also known as "Rugar Richmond Ace," and EDWARD GOTAY, also known as "Younggod Edde," along with others, did knowingly and intentionally use and carry one or more firearms during and in relation to a crime of violence, to wit: the July 8, 2018 robbery referred to above, and did knowingly and intentionally possess said firearms in furtherance of said crime of violence, one or more of which firearms were brandished.

(Title 18, United States Code, Sections 924(c)(1)(A)(i), 924(c)(1)(A)(ii) and 2)

The source of your deponent's information and the grounds for his belief are as follows:[2]

1.     I am a Task Force Officer (hereafter "TFO") with the ATF. I have been a TFO since 2014 and have served in the New York City Police Department (hereafter "NYPD") for approximately 24 years. I have been involved in the investigation of numerous cases involving kidnappings, armed robberies and firearms offenses. The information in this Complaint comes from my personal involvement in the investigation, a review of records of the ATF, NYPD and other government agencies, including video footage recorded by

---

[2]     Because the purpose of this Complaint and Affidavit in Support of an Arrest Warrant are to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

4

surveillance cameras, reports of victim interviews and conversations with other law enforcement officers. Unless specifically indicated, all conversations and statements described in this affidavit are related in sum and substance and in part only.

2.    On or about July 8, 2018 at approximately 2:00 p.m., BROWN, CROWDER, Floyd and GOTAY, participated in the armed kidnapping and armed robbery of a Staten Island, New York marijuana dealer (hereafter "Victim-1") along with Victim-1's fiancée (hereafter "Victim-2") and their approximately 16-month old child (hereafter "Victim-3") in the Eastern District of New York.[3]

3.    During interviews by the ATF and NYPD, Victim-1 stated that on or about July 8, 2018, Victim-1 spoke with BROWN about purchasing high quality marijuana from BROWN.[4] Victim-1 planned to resell some of the high quality marijuana to Victim-1's cousin. On at least one prior occasion, Victim-1 purchased marijuana from BROWN and had also previously smoked marijuana with BROWN at Victim-1's Staten Island residence. During BROWN's visits to Victim-1's residence, Victim-1 showed BROWN where Victim-1 stored marijuana, United States currency, a safe, jewelry, clothing, collector edition Michael Jordan sneakers and a BB gun.

---

[3]    Victim-1 has not received any benefits related to this investigation. Vicim-1's criminal history includes convictions under New York Penal law for: criminal trespass, criminal possession of marijuana, aggravated harassment, attempted criminal sale of a controlled substance and attempted criminal mischief. Victim-2 has not received any benefits related to this investigation and does not have a criminal record.

[4]    This and all other statements by the victims and eyewitnesses to law enforcement are set forth in sum and substance and in part.

4. Victim-1 further stated that on or about July 8, 2018 at approximately 2:15 p.m., BROWN and Victim-1 agreed by phone to meet regarding the sale of the high quality marijuana at the corner of Slaight Street and Nicholson Avenue in Staten Island, New York. Feeling comfortable based on their prior interactions, Victim-1 drove to the meeting along with Victim-2 and Victim-3. After arriving at the location, Victim-1 saw BROWN, but as Victim-1 prepared to purchase the marijuana, three unknown men appeared and one of the men, later identified as Floyd, displayed a firearm and pointed it at Victim-1's head and chest. BROWN immediately ran away. Floyd then stated in sum and substance, "take your chain off," and, "give me all your money before I smack you with this Duce-Duce," referring to the firearm. Along with Floyd were men later identified as CROWDER and GOTAY.

5. According to both Victim-1 and Victim-2, after Floyd demanded Victim-1's chain and money, Floyd then told Victim-1 and Victim-2 to get out of the car. Victim-2 responded that Victim-3 was in the back seat of the car and Floyd stated in sum and substance, "get in the back seat we are not doing this here." Floyd, Victim-1 and Victim-2 then sat in the back seat of the car with Victim-3. GOTAY got into the car's driver's seat and CROWDER sat in the car's front passenger seat. Floyd continued to point the gun at Victim-1's head and chest as CROWDER took Victim-1 and Victim-2's cellphones. GOTAY then drove to Victim-1 and Victim-2's Staten Island residence. Neither Victim-1 nor Victim-2, provided directions or their residence's address to GOTAY.

6. Surveillance cameras at Victim-1 and Victim-2's residence captured video footage of CROWDER, Floyd and GOTAY. None of the men wore masks, and the images captured by the surveillance cameras show Victim-1, Floyd and CROWDER entering the residence. Floyd was wearing a black t-shirt, black pants and black and white sneakers.

6

CROWDER was wearing a black du-rag, white t-shirt, tan colored shorts and white sneakers. When Floyd and CROWDER entered the residence they did not have anything covering their hands.

7.    Victim-1 stated that, once inside the residence, Floyd and CROWDER put on latex gloves. Floyd and CROWDER immediately went to the area of the house where Victim-1 had previously shown BROWN marijuana, United States currency, a safe, jewelry, clothing, collector edition Michael Jordan sneakers and a BB gun. Also while inside the residence, CROWDER told Victim-1 that he had a gun, but that it was not as large as Floyd's gun. CROWDER did not show Victim-1 the additional firearm.

8.    Victim-1 further explained that Floyd and CROWDER placed Victim-1 and Victim-2's property from their house into various bags. When Floyd was unable to locate the BB gun, he demanded that Victim-1 give him the BB gun.[5] Victim-1 located the BB gun and gave it to Floyd. CROWDER then told Victim-1 that in order to avoid suspicion by Victim-1 and Victim-2's neighbors, Victim-1 had to help Floyd and CROWDER carry Victim-1 and Victim-2's property outside of the house.

9.    While Floyd, CROWDER and Victim-1 were inside the residence, surveillance video also captured GOTAY, Victim-2 and Victim-3 outside the residence. GOTAY, did not wear a mask. He wore a black du-rag, black shirt and dark pants, along with white and dark colored shoes. GOTAY initially had his hands in his pants' pockets concealing

---

[5]    Before the July 8, 2018 kidnapping and armed robbery, but after Victim-1 showed BROWN the location of Victim-1's BB gun, Victim-1 moved the location of the BB gun because Victim-1 was afraid of an investigation concerning Victim-1's neighbors and Child and Protective Services.

the fact that he was wearing what Victim-2 described, and later parts of the surveillance video corroborates, as white latex gloves. As GOTAY and Victim-2 waited for the men inside the residence, Victim-2 stated that Victim-2 asked GOTAY to take off the white latex gloves in order to avoid suspicion by Victim-2's neighbors. Victim-2 feared for Victim-1's safety if police arrived while the men were inside Victim-2's residence with Victim-1. GOTAY complied with Victim-2's request, and surveillance video corroborates Victim-2's description of GOTAY removing his white latex gloves.

10.     At approximately 3:00 p.m. surveillance videos further captured CROWDER, Floyd and GOTAY carry Victim-1 and Victim-2's property away from the residence. As CROWDER, Floyd and GOTAY walked away from the residence, CROWDER was no longer wearing his black du-rag.[6] As they exit the residence, CROWDER appeared to be wearing blue latex gloves and Floyd appeared to be wearing white latex gloves. According to both Victim-1 and Victim-2, they begged CROWDER for the return of their cell phones. Additional surveillance videos then captured CROWDER returning the cellphones as CROWDER, Floyd and GOTAY then walked approximately one block to the intersection of Orange Avenue and Seymour Street.

11.     Also at approximately 3:00 p.m., an eyewitness (hereafter "EW-1") stated that EW-1 parked near the corner of Orange Avenue and Seymour Avenue, and noticed what EW-1 believed was either a 2007 or a 2008 black model 740 BMW. EW-1 also noticed

---

[6]     On July 8, 2018 following the kidnapping and armed robbery, Victim-2 was cleaning Victim-1 and Victim-2's residence and found a black du-rag. Victim-2 reported the recovery of the du-rag to police and the Office of Chief Medical Examiner tested the du-rag for DNA. The DNA sample results include three DNA contributors.

that the car was idling and was occupied by what appeared to be one male driver. The driver's head was down and EW-1 thought it was strange that the driver was wearing a black hooded sweatshirt with the hood up. EW-1 also remembered the black BMW had an orange New York license plate. EW-1, also thought that the driver of the black BMW might have had dreadlocks coming out from underneath the hood of the sweatshirt. Additional surveillance cameras from a residence also on Seymour Avenue captured what appeared to be the black BMW driving at a high rate of speed following the kidnapping and armed robbery towards Port Richmond Avenue. Based on a review of law enforcement database vehicle records, in or about July 2018, a black model 750 BMW was registered to BROWN's girlfriend. On March 1, 2018 BROWN was issued a summons while driving a black model 750 BMW. In addition, in or about July 2018, BROWN was known by law enforcement representatives to have dreadlocks.

12. Shortly after the kidnapping and armed robbery, Victim-1 received a text message from BROWN, stating, "I didn't no DAT short was gonna happen dey must been plotting on me Call me." Victim-1 did not respond to this text message. Victim-1 has not heard from BROWN since this July 8, 2018 text message. In the period prior to the armed kidnapping and armed robbery, Victim-1 and BROWN were in contact approximately several times per month.[7]

13. Records from AT&T, Inc. and Sprint, Inc. reflect that BROWN's cellular telephone number exchanged multiple communications with the Floyd's cellular telephone,

---

[7] In addition to Victim-1 communicating with BROWN through text messages, on August 4, 2018, law enforcement officers responded to a domestic incident involving BROWN where he provided the telephone number associated with the prior text messages with Victim-1.

between July 7, 2018 through July 9, 2018.[8] Including on or about July 8, 2018, the date of the armed kidnapping and armed robbery, there were 22 phone contacts between BROWN's cellular telephone number and Floyd's cellular telephone.

14. On August 2, 2018, law enforcement agents showed photo arrays to Victim-1 and Victim-2 including separate photo arrays containing pictures of BROWN, Floyd and GOTAY. Victim-1 and Victim-2 each separately identified BROWN as "Scruff" and indicated that he was the man who lured them to the purported marijuana deal. Each victim also separately identified Floyd and stated that he was the man with the gun on July 8, 2018. However, neither victim identified GOTAY.

15. Later the same day, outside the presence of law enforcement, Victim-2 found that Victim-2 had received a Facebook friend suggestion to add "Allan Floyd" as a "friend." Victim-2 immediately recognized the friend suggestion as the man with the gun and the person Victim-2 earlier identified in the photo array. Victim-2 reviewed Floyd's Facebook photos and saw Floyd wearing what appeared to be a pair of Victim-1's Air Michael Jordan sneakers and Victim-2's watch, both of which were taken on July 8, 2018.

16. Victim-2 further found Floyd's Facebook friends and identified a person with the Facebook page entitled "Younggod Edde." Victim-2 immediately recognized "Younggod Edde" as the man who waited outside of Victim-2's residence during the kidnapping and armed robbery. Victim-2 further identified Facebook photographs of

---

[8] On or about August 7, 2018, Floyd was involved in a traffic stop by law enforcement officers where Floyd provided the telephone number associated with prior communications with BROWN's telephone number.

"Younggod Edde" wearing what Victim-2 believed to be a pair of Victim-1's Michael Jordan sneakers as well as one of Victim-2's watches, both items that were taken during the armed kidnapping and armed robbery. Law enforcement agents who have previously personally encountered Floyd and GOTAY reviewed the Facebook photographs, referenced above, which were provided by Victim-2 and determined the individual associated with "Younggod Edde" in the Facebook photographs is GOTAY. In addition, law enforcement agents confirmed that the Facebook accounts provided by Victim-2 appear to be those belonging to Floyd and GOTAY.

17. On September 6, 2018, GOTAY was stopped by the NYPD for having tinted windows. GOTAY was driving on a suspended license. During the course of the stop, GOTAY was wearing collector edition black Air Michal Jordan Gamma sneakers and a black and gold watch. Both of these items are consistent with those taken during the armed kidnaping and armed robbery. Photographs of these items were taken by law enforcement and on September 12, 2018, Victim-1 was shown photos of the black Air Michael Jordan Gamma shoes and the black and gold watch and Victim-1 stated that they both appeared to be Victim-1's property that was taken during the armed kidnapping and armed robbery.

18. In or about January 2019, law enforcement authorities were able to identify Floyd, GOTAY and BROWN's residences in Staten Island, New York. On February 26, 2019, the Honorable Magistrate Judge Steven L. Tiscione issued search warrants for BROWN, Floyd and GOTAY's residences (19-MC-174 (SLT)). On the morning of February 27, 2019, ATF and NYPD officers (hereafter "the Search Team"), conducted searches of BROWN, Floyd and GOTAY's residences.

19.     The Search Team recovered the following items from BROWN's residence, including but not limited to, multiple pairs of Michael Jordan sneakers and two watches that are the same make and model as those taken from the victims' home. The Search Team also recovered, among other things, the following items from Floyd's residence: multiple pairs of Michael Jordan sneakers, a Michael Jordan sneaker box and two digital scales.

20.     In addition, the Search Team recovered the following items, among other things, from GOTAY's residence: mail matter in GOTAY's name, a backpack containing men's underwear that had inside the underwear a heat-sealed bag with a Glock Model 42 .380 caliber pistol, serial number AAWT117, and in the pistol's magazine, that wrapped with the pistol in the underwear were a six rounds of ammunition as well as thirty-five additional .380 caliber rounds of ammunition and an ammunition holder. Of those thirty-five additional rounds of ammunition, two of the rounds were hollow-point ammunition. The Search Team also recovered, among other things, the following: VitaBlend Mannitol powder[9]; multiple razor blades; multiple rubber bands; multiple Ziploc bags; three digital scales; a plastic bag containing green plant like substance that, based upon my training and experience, appears to be marijuana; multiple sandwich-size Ziploc bags containing multiple white colored rocks that, based upon my training and experience, appears to be cocaine base (common referred to as crack cocaine); multiple sandwich-size Ziploc bags containing white a colored powder

---

[9]     Based upon my training and experience, I am familiar that VitaBlend Mannitol powder is commonly utilized by narcotics traffickers as a cutting agent that is mixed with narcotics, including cocaine base and heroin.

substance that, based upon my training and experience, appears to be powder cocaine base; and a plastic bag containing a tan colored substance that, based upon my training and experience, appears to be heroin.

21.     A review of BROWN's prior criminal history releveled that he is currently on bench warrant status in Fort Bend County, Texas. In his pending Texas case, BROWN had two male co-defendants–one of the two co-defendants is listed as a "Jason Ortiz." A comparison of law enforcement database information with the photograph and date of birth provided to Texas authorities for "Jason Ortiz" revealed that this name is in fact an alias previously used by CROWDER. Law enforcement database information further revealed that a recent address for CROWDER is within the same Staten Island neighborhood of a prior address provided by BROWN. I compared the date of birth and Texas photograph of "Jason Oritz" (CROWDER) to the surveillance videos obtain during the course of this investigation, and, based upon my training and experience, and participation in this investigation, I believe that "Jason Ortiz"–BROWN's prior Texas co-defendant–is in fact CROWDER.

WHEREFORE, your deponent respectfully requests that the defendants BARIN

BROWN, also known as "Scruff," JASON CROWDER, also known as "Jason Ortiz," and

EDWARD GOTAY, also known as "Younggod Edde," be dealt with according to law.


Respectfully submitted,

_____
FINBARR FLEMING
Task Force Officer
Bureau of Alcohol, Tobacco, Firearms and
Explosives



Subscribed and sworn to before this
___ day of March, 2019

_____
HONORABLE JAMES ORENSTEIN
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK